# STATE OF MICHIGAN

# COURT OF APPEALS

---

BARRY L. KING,

        Plaintiff-Appellant,

v

OAKLAND COUNTY PROSECUTOR,

        Defendant-Appellee.

UNPUBLISHED
December 13, 2016

No. 328403
Oakland Circuit Court
LC No. 2014-144272-CZ

---

Before: JANSEN, P.J., and CAVANAGH and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the opinion and order of the trial court denying his motion for reconsideration of the court's order granting summary disposition pursuant to MCR 2.116(C)(7) and (C)(8). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff has twice previously appealed to this Court trial court orders issued in cases filed against this defendant. See *King v Oakland Co Prosecutor*, 303 Mich App 222, 224; 842 NW2d 403 (2013) (*King I*), and *King v Oakland Co Prosecutor*, unpublished opinion per curiam of the Court of Appeals, issued July 31, 2014 (Docket No. 314779) (*King II*). Plaintiff has also filed multiple suits against other defendants, of which some were and others were not appealed to this Court. See *King v Michigan State Police Dep't*, 303 Mich App 162, 841 NW2d 914 (2013); In *re Barry L King I* (Oakland Circuit Court LC No. 2011-122050-CZ), and *In re Barry L King II* (Oakland Circuit Court LC No. 2012-124677-AW). In this opinion, *King I* and *King II* refer to prior cases filed against defendant and appealed to this Court, while *In re Barry L King I* and *In re Barry L King II* refer to prior circuit court actions filed against the 48th District Court from which no appeal was taken.

*King II* summarized the pertinent background facts as follows:

Plaintiff was the father of Timothy King, who, in March 1977, was 11 years old when he went missing after he made a trip to a drugstore in Birmingham. Timothy's body was later discovered and Timothy, along with three other young children, were suspected to have been victims of the 'Oakland County Child Killer,' who has yet to be identified and prosecuted. However,

-1-

various agencies have continued to investigate leads in the matter over the decades.

> In 2008, the police followed up on new leads and focused the investigation on Christopher Busch, who, in the 1970s, resided in Bloomfield Township. The police obtained search warrants for the house where Busch had been living, to search for trace evidence that could be connected to the murders. The search warrants were issued by the 48th District Court. In 2010, defendant advised plaintiff that Busch was no longer considered a suspect in the murder of his son. [*King II*, unpub op at 1.]

This crime remains the subject of an ongoing investigation by the Oakland County Child Killer (OCCK) Task Force. Plaintiff has filed several requests for documents under the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, from the agencies involved, presumably seeking answers to questions concerning the death of his son. He has also sought copies of the 2008 search warrant and affidavit in support of the warrant relating to the search of Busch's former residence in Bloomfield Township. In 2011, the 48th District Court entered a temporary order and subsequent extensions of that order suppressing that evidence. However, on April 1, 2013, plaintiff was given access to those documents. Plaintiff has also been permitted to discuss the status of the OCCK Task Force investigation with authorities directly involved with the investigation. Nevertheless, plaintiff continues to seek information relating to the filing and entry of the warrant and affidavit, as well as various other documents concerning the investigation, and requests an explanation for numerous decisions of defendant relating to the investigation.

In the instant case, plaintiff filed suit seeking an order compelling the Oakland County prosecutor to confer with plaintiff regarding the status of the investigation pursuant to the Crime Victim's Rights Act (CVRA), MCL 780.751 *et seq*. Plaintiff also sought to invalidate the 48th District Court's order temporarily suppressing the 2008 search warrant and affidavit, and to have sanctions imposed on defendant for allegedly obtaining this order in violation of numerous court rules and the Michigan Rules of Professional Conduct. Defendant moved the trial court for summary disposition under MCR 2.116(C)(7) (barred by prior judgment) and MCR 2.116(C)(8) (failure to state a claim). Plaintiff responded to defendant's motion, contending that he was entitled to discovery relating to defendant's apparent improper actions in investigating the underlying case and in defending against plaintiff's lawsuits, and restating various requests for admission that he had directed to defendant.

The trial court granted defendant's motion, finding that plaintiff had failed to provide legal support for his asserted right to confer with defendant and that this Court had previously determined that the CVRA provided no such right. It further found that the issues regarding the search warrant and affidavit had been fully litigated and were barred by prior judgment and that plaintiff's challenge to the propriety of the entry of the suppression order was an impermissible collateral attack on the lower court's order. Regarding the request for discovery, the trial court concluded that plaintiff's attempt to obtain discovery through requests for admission and interrogatories went beyond the context of a valid legal claim. It also denied plaintiff's related request to amend his complaint. Thereafter, the trial court denied plaintiff's motion for reconsideration. This appeal followed.

## II. STANDARD OF REVIEW

We review de novo a trial court's ruling on a motion for summary disposition. *Anzaldua v Neogen Corp*, 292 Mich App 626, 629; 808 NW2d 804 (2011). Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred because of a prior judgment. *Hanley v Mazda Motor Corp*, 239 Mich App 596, 599; 609 NW2d 203 (2000). A court reviewing a motion brought under this subrule must "consider affidavits, pleadings, depositions, admissions, and documentary evidence filed or submitted by the parties when determining whether a genuine issue of material fact exists." *Id.* "The motion should not be granted unless no factual development could provide a basis for recovery." *Jones v State Farm Mut Auto Ins Co*, 202 Mich App 393, 397; 509 NW2d 829 (1993).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. Summary disposition under subrule (C)(8) is appropriate if no factual development could justify the plaintiff's claim for relief." *Summer v Southfield Bd of Ed*, 310 Mich App 660, 668; 874 NW2d 150 (2015) (quotation marks and citation omitted). We accept as true all well-pleaded factual allegations and construe them in a light most favorable to the nonmovant. *Genesee Co Drain Comm'r v Genesee Co*, 309 Mich App 317, 323; 869 NW2d 635 (2015).

We review de novo the applicability of the equitable doctrine of collateral estoppel. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008).

Generally, we review a trial court's decision to grant or deny discovery for an abuse of discretion." *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003). We review unpreserved issues for plain error affecting substantial rights. *In re HRC*, 286 Mich App 444, 450; 781 NW2d 105 (2009).

## III. RIGHT TO CONFER

In his brief on appeal, plaintiff fails to address the trial court's rulings that form the basis of this appeal. Rather, plaintiff asserts six issues that he deems to require further discovery. These assertions relate to plaintiff's claim discussed in Part V, below. Plaintiff thus offers no specific argument concerning his right to confer with defendant. Nonetheless, we note that the trial court did not err by dismissing plaintiff's complaint because the issues were barred by prior judgment and the complaint failed to state a claim on which relief may be granted.

In his complaint, plaintiff alleged that he was entitled to confer with the prosecutor under the CVRA and sought an order to compel such a meeting. Crime victims are entitled "to confer with the prosecution" under the Michigan Constitution, Const 1963, art 1, § 24. The Legislature enacted the CVRA to prescribe the manner of affording this constitutional right to crime victims. *King I*, 303 Mich App at 241. In that prior action before this Court, plaintiff argued that the Oakland County Prosecutor violated a constitutional duty to confer with him. *Id*. at 239. We rejected plaintiff's claim, stating:

> Because it is undisputed that the crime at issue here was committed in March 1977 and because article 1 of the CVRA only applies to crimes committed after

October 9, 1985, the CVRA does not apply to the present case. Nonetheless, even assuming that the CVRA did apply, plaintiffs have failed to identify any provision that requires a prosecutor to confer with victims before charges are filed. MCL 780.756 prescribes the duties owed by the prosecutor to each victim after the criminal defendant has been arraigned for the crime. No charges have been filed and no arraignment has occurred in this matter. Accordingly, plaintiffs have failed to establish that defendant has violated any constitutional or statutory duty to confer with plaintiffs . . . . [*Id.* at 242.]

The reasoning of *King I* remains sound. The record indicates that the investigation of the OCCK crimes is ongoing, and there have been no charges filed. Under the facts and current interpretation of the CVRA, plaintiff cannot state a viable claim for the right to confer with the prosecutor in the instant case. MCR 2.116(C)(8).[1]

Further, this same claim is barred by collateral estoppel based on a prior judgment. "Collateral estoppel, or issue preclusion, precludes relitigation of an issue in a subsequent, different cause of action between the same parties or their privies when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001). Again, we have previously rejected the exact claim that plaintiff alleged in his complaint in this case. *King I*, 303 Mich App at 236, 242. Accordingly, we conclude that the trial court did not err by granting defendant's motion for summary disposition relative to this claim. MCR 2.116(C)(7).

IV. SUPPRESSION ORDER

Plaintiff also claimed before the trial court that defendant acted in bad faith in obtaining an order of suppression for evidence relating to a 2008 search warrant and affidavit. In its 2011 order, the 48th District Court suppressed the search warrant and affidavit executed at a Bloomfield Township address under MCL 780.651. Thereafter, plaintiff filed a complaint in the Oakland Circuit Court against the Clerk of the 48th District Court. In *In re Barry L King I*, plaintiff alleged that the district court was subject to the FOIA and violated the Act by denying his request to examine the search warrant and affidavit issued in the OCCK investigation. In an amended complaint, plaintiff sought to be permitted to review the suppressed search warrant and affidavit, as well as documents related to the filing of the suppression order and its renewals. Plaintiff contended that the defendant did not follow the proper procedures for filing and renewing a suppression order. On January 4, 2012, the circuit court affirmed the legality of the order by granting summary disposition in favor of the district court and dismissing plaintiff's lawsuit.

The circuit court reached the same conclusion in the case of *In re Barry L King II*. On April 17, 2012, it dismissed plaintiff's complaint, noting that the proper remedy to challenge the

---

[1] We note additionally that plaintiff has been provided at least one opportunity to meet with members of the OCCK task force to discuss the investigation.

previous court order was to appeal the circuit court's ruling in that case. The circuit court also denied plaintiff's motion for reconsideration of this matter.

Plaintiff also challenged the suppression order as part of his FOIA claims in *King II*. We affirmed the circuit court's order dismissing plaintiff's case, noting in relevant part the invalidity of this claim that the search warrant and affidavit were improperly suppressed. *King II*, unpub op at 1-2. We ruled that the issue was moot because plaintiff admitted that he was given access to the entire 48th District Court file on April 1, 2013. *Id*. at 2. We further noted the FOIA action was not the proper avenue for challenging the district court's suppression decision. *Id*. at 2, n 3.

Plaintiff's claims regarding whether defendant properly obtained the 2011 suppression order is an improper collateral attack on the circuit court's orders issued regarding the district court order. Generally, any error that may be challenged through a direct appeal may not be challenged later in a collateral attack. *In re Hatcher*, 443 Mich 426, 439-440; 505 NW2d 834 (1993). If such delayed attacks were permissible, there would be no finality of judgment. *Id*. at 440. Plaintiff initially challenged the legality of the now-expired suppression order through a direct attack against the 48th District Court in a lawsuit filed in the circuit court. Plaintiff chose not to appeal that ruling to this Court and cannot now seek a different result by mounting an attack in a separate case. In *In re Barry L King II*, the circuit court properly held that plaintiff's sole course of action was in an appeal from the circuit court's order in the first case. Because plaintiff's allegations related to the suppression order were an improper collateral attack, not a direct appeal, the trial court did not err by granting defendant's motion for summary disposition and dismissing this claim as one for which no relief may be granted, and in declining to impose sanctions on defendant. MCR 2.116(C)(8).

## V. FURTHER DISCOVERY

Finally, plaintiff's complaint sought discovery regarding certain other matters relating to the OCCK investigation. In his response to defendant's motion for summary disposition, plaintiff claimed that summary disposition was improper because certain issues required further discovery. Although the trial court did not directly address each of plaintiff's enumerated issues, it held that "plaintiff's attempt to gain discovery by way of request to admit and interrogatories [was] improperly outside the context of a valid legal claim . . . ." Accordingly, this matter of plaintiff's claim for further discovery is preserved for appeal, and we will address the specific claims that were left undecided. See *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443-444; 695 NW2d 84 (2005) ("[W]here the lower court record provides the necessary facts, appellate consideration of an issue raised before, but not decided by, the trial court is not precluded.").

We hold that none of the six issues raised by plaintiff as requiring further discovery present a claim on which relief may be granted. First, plaintiff claims that an explanation is required where defendant submitted two non-identical copies of the April 29, 2011 order of suppression to the judges in his FOIA cases and a court copy of the suppression order was undated. Plaintiff has attached copies of orders that the 48th District Court issued relating to the suppression of the 2008 search warrant and affidavit. There is a dated and an undated copy of the order granting the motion to clarify the suppression order, as well as a dated copy of a different order that renewed the suppression and clarified the trial court's intent regarding the

information to be suppressed. The dated orders were issued on April 29, 2011, were stamped as "a true copy," and were signed by the clerk of the district court. Plaintiff appears to argue that the issuance of two different orders of suppression on April 29, 2011 renders the orders invalid. Plaintiff cites no authority to support this legal position. "This Court will not search for authority to sustain or reject a party's position. The failure to cite sufficient authority results in the abandonment of an issue on appeal." *Hughes v Almena Twp*, 284 Mich App 50, 71-72; 771 NW2d 453 (2009) (citation omitted). In addition, the second order appears to be a clarification of the court's ruling on the suppression of the information, indicating that the warrant and affidavit are to be suppressed as a nonpublic record and specifying certain agencies that must comply with the order as long as the investigation is ongoing. There is no legal authority prohibiting a court from issuing more than one order in a case on the same day.

Plaintiff also appears to argue that the undated copy invalidates the stamped and signed copies. He states that "[i]n 56 years of practice [he] has never seen the case in which an alleged true copy did not fully conform with the Court copy." Again, he cites to no rule or case in support of this legal argument, and there is no such authority holding that a court clerk's failure to date the court's copy of an order invalidates the true copy of that order. Even if a true copy could be deemed invalid in this manner, it would have no effect on this case. In *King II*, we held that plaintiff's challenge to the suppression order was moot because plaintiff had been provided with access to the documents that were the subject of the now-expired order. *Id*. at 2. Further, as discussed above, the instant case is not the proper vehicle for an attack on the suppression order. Accordingly, this argument has no legal merit.

Second, plaintiff finds error in the procedure used in filing and entering the suppression order and the subsequent extensions of that order. Again, plaintiff should have sought a direct appeal of the circuit court's decision, not attempted a delayed attack in a separate action. *In re Hatcher*, 443 Mich at 439-440. Accordingly, plaintiff's claim for further discovery of this matter lacks legal merit.[2]

Third, plaintiff asserts that defendant must disclose its error in stating it could not provide, in response to his FOIA request, certain Michigan State Police (MSP) and Federal Bureau of Investigation (FBI) reports because they had been returned to the agencies, when defendant in fact subsequently produced some of the records. In particular, plaintiff claims to have received more than 300 pages of MSP documents involving Busch and two companions after defendant had claimed it could not produce the records. Plaintiff references the affidavit of Chief Assistant Prosecutor Paul Walton attached to the Bill of Particulars issued by defendant in 2012 as part of *King II*. Walton's affidavit concerned the records he reviewed in order to

---

[2] Even if this were the proper venue for plaintiff's claim, there is no merit to his assertion that the 48th District Court violated the FOIA, because the Act does not apply to the judiciary. See MCL 15.232(d)(v) ("The judiciary, including the office of the county clerk and employees thereof when acting in the capacity of clerk to the circuit court, is not included in the definition of public body."). In addition, plaintiff's citations to authority do not pertain to or establish the requirements for temporary search warrant suppression orders issued under MCL 780.651.

complete a PowerPoint presentation summarizing the investigation for law enforcement agencies. Walton claimed that investigators from the two agencies were present with their records during his review and that, following the completion of his review, he returned all the MSP and FBI records that he used for the presentation to the government agencies. In *King II*, unpub op at 5-6, this Court found no errors in defendant's Bill of Particulars. Further, Walton's statement does not preclude the possibility that records from the MSP might have already been part of the investigatory file that was later provided to plaintiff; rather, Walton only stated that records he reviewed from the MSP and FBI in preparing a PowerPoint presentation were returned to those agencies. Therefore, the record does not support plaintiff's argument that a discrepancy in defendant's claims of exemption requires further discovery.

Fourth, plaintiff claims that he is entitled to discovery regarding defendant's allegedly false accusation that plaintiff disclosed the existence of the grand jury to a reporter from Channel 4 news. Plaintiff seeks the identity of the person alleging his involvement and the factual basis for the assertion against him. Plaintiff brought this exact claim in his prior appeal in *King II*, unpub op at 2-3. We determined that the then-existing record did not establish that the requested documents existed and affirmed the trial court's dismissal. *Id*. Here, plaintiff has merely restated the same arguments and has provided no further facts that warrant a change in our holding. We accordingly see no reason to revisit our holding in *King II*. *Ditmore*, 244 Mich App and 577.

Fifth, plaintiff contends that defendant should be required to explain (presumably through some discovery procedure, although plaintiff does not specify one) its actions in releasing information regarding Busch and his two companions to local news media sources while proclaiming to plaintiff and the trial court that this same information was exempt from public disclosure. In the body of his brief, plaintiff fails to elaborate on the specifics of this argument and offers no supportive legal authority. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). In addition, the release of documents relating to the OCCK crimes was addressed and determined in *King II*, unpub op at 5-6, where we found "nothing erroneous in defendant's following the circuit court's ruling by filing the Bill of Particulars and . . . nothing erroneous in the Bill of Particulars itself." Plaintiff provides no reason for us to revisit this issue. *Ditmore*, 244 Mich App and 577.

Finally, plaintiff argues that defendant cannot unilaterally determine which suspects to charge with a crime. In particular, plaintiff asserts that defendant must provide an explanation (again, presumably during a discovery process) for its decision not to further pursue and charge Busch and his companions with the crimes at issue. Plaintiff speculates that defendant's decision derives from a myriad of political abuses and disparate treatment of suspects. He also contends that an explanation is required for defendant's inconsistent treatment of the victims' families. Again, plaintiff provides no legal authority to support this assertion, and we will not search for such authority. *Hughes*, 284 Mich App at 71-72. Further, in *King I*, this Court ruled, when presented with similar assertions regarding credibility and speculation about motive (for withholding information regarding Busch) that compelling the deposition of the prosecutor was not essential to prevent injustice and would have amounted to nothing more than a "fishing expedition." *King I*, 303 Mich App at 238. This Court also ruled that the CVRA did not apply

to the case and, even if it did, would not require the prosecutor to confer with any victims before charges were filed. *Id*. at 242. Thus, to the extent that plaintiff seeks a conference with defendant where defendant provides him with the explanations he demands, we find no legal basis upon which to compel that meeting.

Further, to the extent that plaintiff seeks documentary information regarding defendant's decision not to prosecute certain suspects, the issue is settled. In *King II*, unpub op at 3-4, this Court upheld the trial court's finding that the work product privilege entitled defendant to withhold information relating to defendant's decision that Busch and a companion were not involved in the murder of plaintiff's son. It found the case of *People v Gilmore*, 222 Mich App 442, 446, 454-457; 564 NW2d 158 (1997), instructive because this Court denied the defendant's request for the "disposition record" relating to the failure to prosecute a park ranger whom the defendant claimed had assaulted him, after concluding that the document was prepared in anticipation of litigation. *King II*, unpub op at 3-4. In *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 641 n 2; 591 NW2d 393 (1998), we indicated that both factual and deliberative materials may be exempted from disclosure under the FOIA. Thus, we conclude that plaintiff's claims regarding defendant's charging decisions do not warrant further discovery.

For these reasons, the trial court properly declined to order further discovery. The record indicates that further discovery would not give rise to a viable legal claim. Therefore, the trial court did not err in granting summary disposition in favor of defendant.

Affirmed.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Mark T. Boonstra